## Roger A. Lane v. State of Vermont

[811 A.2d 190]

No. 00-564

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 23, 2002
Motion for Reargument Denied September 25, 2002

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, and *Reg J. Lormon*, Los Gatos, California, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Cathy Nelligan Norman* and *Richard A. Johnson*, Assistant Attorneys General, Montpelier, for Defendant-Appellee.

**Skoglund, J.** This appeal arises out of a negligence action brought by plaintiff Roger Lane against defendant State of Vermont to recover for injuries sustained in an accident on an icy highway. Lane argues that the State was negligent in (1) failing to close the section of Interstate 89 North in the vicinity of the Waterbury/Bolton town line, (2) failing to adequately advise the motoring public that this section of I-89 was icy, and (3) affirmatively creating a defective condition by paving this section of I-89 with open graded pavement and enhancing the dangerous condition by failing to take specific measures to prevent and/or ameliorate the formation of ice. The State filed a motion for summary judgment on all of Lane's claims on the grounds that they

were barred by the discretionary function exception to the State's waiver of sovereign immunity. The Chittenden Superior Court granted the State's motion for summary judgment on November 6, 2000. The court held that Lane's first two claims against the State were barred by the doctrine of sovereign immunity and that Lane failed to raise any issue of material fact that the State affirmatively caused a defective condition in the highway or enhanced the dangerous condition by inadequate salting. Lane appeals the grant of summary judgment to the State. We affirm.

In reviewing a grant of summary judgment, this Court applies the same standard as the trial court. *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 17-18, 665 A.2d 580, 582 (1995). Summary judgment is appropriate only when the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Samplid Enters., Inc. v. First Vt. Bank*, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996).

On December 22, 1995, Lane was involved in a car accident on Interstate 89 (I-89) near mile markers 67 and 68, just north of Waterbury. The weather forecast and actual conditions for that date were: 20 mile per hour winds, blowing snow, and freezing temperatures with rain resulting in icy and hazardous road conditions. The State had posted signs warning drivers to reduce speed due to ice and snow at interchanges on I-89. One such sign was located approximately three miles south of the accident site. The State had repaved this section of I-89 in October of 1995 with open graded pavement, which allegedly requires more monitoring and ice control measures than conventional pavement.

Lane was a passenger in a car driven by Leon Dunn. Dunn, who was traveling approximately 65 miles per hour, noticed some cars pulled over on the right side of the road. The car ahead of Dunn was going slow so he moved into the passing lane. Dunn was unable to stop when he encountered ice on the highway and skidded into another vehicle parked in the breakdown lane. Lane suffered a severe spinal chord injury as a result of the accident.

## I.

Lawsuits against the State are barred unless the State waives its sovereign immunity. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 484-85, 622 A.2d 495, 497 (1993); see also *American Trucking Ass'ns, Inc. v. Conway*, 152 Vt. 363, 376, 566 A.2d 1323, 1331 (1989) (holding that the doctrine of sovereign immunity precludes the maintenance of

actions for the recovery of money against the State unless the State has consented to be sued). Under the Vermont Tort Claims Act, 12 V.S.A. § 5601(a), the State has waived its immunity and has consented to be sued for injury to persons caused by the negligent or wrongful act or omission of an employee of the State while acting within the scope of employment. Despite this general waiver, the Tort Claims Act has retained sovereign immunity for certain claims. Two sections of the Tort Claims Act which specifically retain immunity are pertinent to our analysis: 12 V.S.A. § 5601(e)(1) & (8).[1]

The first is the discretionary function exception. 12 V.S.A. § 5601(e)(1) protects the State from:

> Any claim based upon an act or omission of an employee of the state exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused.

The purpose of this discretionary function exception is "to assure that the courts do not invade the province of coordinate branches of government by passing judgment on legislative or administrative policy decisions through tort law." *Sabia v. State*, 164 Vt. 293, 307, 669 A.2d 1187, 1196-97 (1995).

In *Searles v. Agency of Transportation*, 171 Vt. 562, 762 A.2d 812 (2000) (mem.), this Court adopted a two-part test for determining whether a plaintiff's claim is barred under the discretionary function exception. This test was first established by the U.S. Supreme Court in *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).[2] The first prong of the test examines whether the acts involved are "discretionary in nature," involving " 'an element of judgment or choice.' " *Id.* at 322

---

[1] 12 V.S.A. § 5601(f) provides that the limitations in subsection (e) do not apply to claims against the State of Vermont to the extent that there exists coverage under a policy of liability insurance. Subsection (f) does not apply in the instant case because there is no coverage under a policy of liability insurance for the claims in this action that fall within subsection (e)(1) or (e)(8).

[2] The discretionary function exception to the Vermont Tort Claims Act is nearly identical to that of the Federal Tort Claims Act. This Court therefore looks to case law interpreting the federal provision to guide us in analyzing 12 V.S.A. § 5601(e). *LaShay v. Dep't of Social & Rehab. Servs.*, 160 Vt. 60, 67-68, 625 A.2d 224, 229 (1993); see also *Searles*, 171 Vt. at 563 n.*, 762 A.2d at 813-14 n.*.

(quoting *Berkovitz v. United States,* 486 U.S. 531, 536 (1988)). If a statute or regulation or policy specifically prescribes a course of action for an employee to follow, then the discretion requirement is not met. *Id.* If the court determines that the act involved an element of judgment or choice, it must then decide under the second prong " 'whether that judgment is of the kind that the discretionary function exception was designed to shield.' " *Id.* at 322-23 (quoting *Berkovitz,* 486 U.S. at 536). Since its purpose is to prevent courts from passing judgment on legislative or administrative policy decisions through tort law, the discretionary function exception " 'protects only governmental actions and decisions based on considerations of public policy.' " *Id.* at 323 (quoting *Berkovitz,* 486 U.S. at 537).

12 V.S.A. § 5601(e)(8) is the second pertinent statutory exception to the general waiver of immunity and protects the State from "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways." This Court has interpreted the statute, however, to preserve liability in circumstances where the State unintentionally failed to comply with chosen design standards. *McMurphy v. State,* 171 Vt. 9, 12, 757 A.2d 1043, 1046 (2000) (if a plaintiff can prove that the State intended to comply with certain standards, but failed to do so, the State would be liable for any injury caused if the plaintiff can also prove that such noncompliance was negligence).

With these two statutory exceptions to the State's general waiver of immunity in mind, we turn to each of Lane's claims against the State.

## II.

Lane first argues that the State's decision not to close I-89 contradicted the public policy of keeping roads safe and therefore cannot be protected by the discretionary function exception outlined in 12 V.S.A. § 5601(e)(1). We disagree. Authority to close a state highway to public travel is vested in a traffic committee pursuant to 23 V.S.A. § 1006a(a), which states "[t]he traffic committee *may* close any part or all of any state highway to public travel to protect the health, safety or welfare of the public." (emphasis added). The relevant statutory provision is not mandatory and clearly gives the committee discretion in deciding whether to close the highway or not. The Traffic Committee has in turn delegated the authority to close portions of the State's highways for emergency reasons to the District Highway Engineers of the Vermont Department of Highways and the Troop Commanders of the Vermont State Police. 8A Code of Vermont Rules

14 053 001-2 (1999). The language of this provision delegates to officials on the scene the authority to act if their evaluation of the road conditions leads them to conclude that such action is necessary. Such a decision clearly involves an element of judgment ·or choice, and therefore meets the first prong of the *Searles* test.

We must then consider whether the action of closing a road involves the kind of policy judgment that the discretionary function exception was designed to shield. Under the analysis relied on in *Gaubert*, when established governmental policy, as express or implied by statute, regulation, or agency .guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. *Gaubert*, 499 U.S. at 324.

In *Searles* this Court adopted the *Gaubert* presumption that a discretionary decision is based on public policy considerations. For plaintiff to survive on defendant's summary judgment motion, he must allege facts which would be sufficient enough to overcome the presumption that the discretionary decision to close a highway due to adverse weather conditions was based on public policy considerations. *Searles*, 171 Vt. at 563, 762 A.2d at 815. He has failed to do so. To the contrary, the decision whether to close one of the most traveled highways in Vermont is precisely the type of decision that the discretionary function exception was designed to insulate. The court in *Estate of Arrowwood v. State*, 894 P.2d 642, 645-46 (Alaska 1995), held that the decision to close or not close a road due to inclement weather was a "planning-level decision" that fell within the ambit of the discretionary function exception of Alaska's Tort Claims Act and stated:

> If we ruled otherwise, the result would be that state officials would be forced to close state highways upon receiving notice of the first accident which resulted from adverse weather and road conditions, or else risk incurring liability for failure to do so. Given the long winters and harsh weather conditions which occur throughout most of Alaska, such a decision would make road travel at best unreliable.

See also *Childers v. United States*, 841 F. Supp. 1001, 1015-16 (D. Mont. 1993) (the decision whether to close a trail in a national park is clearly discretionary because it involves an element of judgment or choice and such a decision inherently requires a balancing of public

policy objectives, such as resource allocation, visitor safety, and visitor access). Plaintiff has failed to overcome the presumption that the decision to close a road due to inclement weather is a discretionary function that involves the kind of public policy judgment protected by the discretionary function exemption.

## III.

Lane next argues that the State was negligent for failing to advise the motoring public that the section of I-89 in question was particularly susceptible to ice. More specifically, he alleges that once the State made the affirmative act of posting warning signs, it was then bound to both erect a warning sign at the accident site and to comply with the United States Department of Transportation Federal Highway Administration's Manual on Uniform Traffic Control Devices (MUTCD).

Under 23 V.S.A. § 1025(a), the Vermont Legislature has adopted the MUTCD for all traffic control signs, signals and markings within the state. This Court has previously characterized the MUTCD as "more of a guidebook for the installation of signs than a 'specific prescription,'" *Searles*, 171 Vt. at 564, 762 A.2d at 814 (internal citation omitted). It does not mandate the erection of any sign. *Id.* The MUTCD does not require signs warning drivers of adverse weather conditions in general, and does not require signs warning drivers of areas that are particularly susceptible to icy conditions in particular. This Court has concluded that the decision whether or not to erect a warning sign is a discretionary act protected by the discretionary immunity exception outlined above. *Id.* at 564, 762 A.2d at 815.

While Lane does not dispute that the State has discretion in deciding whether or not to erect signs, he argues that the fact the State did place some warnings signs on I-89 is evidence in and of itself that the State deemed the warning signs necessary. He argues that positioning the signs at interchanges did not adequately provide drivers with time to respond to road conditions and suggests that the State was required to erect a sign near the accident site. Lane, however, has failed to present any evidence that the State deemed that the area where the accident occurred required a specific warning sign. Absent evidence that the State deemed a warning sign necessary but failed to erect one, or that the failure to erect a sign was not based on public policy considerations, the placement of signs is a discretionary function immune from suit. See *id.* at 565, 762 A.2d at 815 ("To reverse

*Gaubert's* presumption and require the State to produce evidence that it made a conscious decision, based upon policy considerations, not to place a warning sign at every dirt road intersection in Vermont, would be unduly burdensome."); see also *Miller v. United States*, 710 F.2d 656, 665-66 (10th Cir. 1983) (failure to warn of dangerous road conditions is not an actionable claim under the Federal Tort Claims Act).

In addition, Lane argues that once the State made the affirmative act of erecting warning signs on the highway, it was then bound to follow the MUTCD requirements for those signs and its failure to do so constitutes negligence. As discussed above, 12 V.S.A. § 5601(e)(8) preserves liability in circumstances where the plaintiff can prove that the State intended to comply with certain standards, it did not comply, and such noncompliance was negligence. *McMurphy*, 171 Vt. at 12, 757 A.2d at 1046. The State has conceded that the signs provided here were designed to comply with MUTCD requirements. In order to survive summary judgment on this claim, however, Lane must still raise an issue of material fact as to whether the State was negligent in failing to comply with MUTCD. MUTCD provides that in order to be effective, warning signs should provide adequate time for the driver to perceive, identify, decide and perform any necessary maneuver. Federal Highway Administration, U.S. Dept. of Trans., Manual on Uniform Traffic Control Devices 2C-3 (1988). Lane's evidence of the State's alleged negligence consists of Mr. Dunn, the operator of the car, claiming to have no knowledge of posted warning signs and the supervisor for the relevant district having no record of which direction the existing signs were facing on the day of the accident. This evidence does not raise any issue of material fact as to whether the State was negligent in failing to comply with MUTCD requirements.

## IV.

Finally, plaintiff claims that there is a genuine issue of material fact as to whether the State was negligent in failing to take specific measures to prevent and/or ameliorate the formation of ice on I-89. The State has a duty to use reasonable diligence to maintain its roads in a reasonably safe condition for the uses for which they were established. *McCormack v. State*, 150 Vt. 443, 445, 553 A.2d 566, 568 (1988). A breach of this duty occurs where the State fails to correct a defect and has either actual or constructive notice of the existence of a defect, and a reasonable amount of time in which to correct it. *Id.* at

445-46, 553 A.2d at 568. Where the defective condition is caused by an affirmative act of the State, however, no notice of any kind, either actual or constructive, is necessary. *Id.* at 446, 553 A.2d at 568.

Lane first argues that the State need not have had actual or constructive notice in order to be found negligent because it affirmatively created the dangerous condition on the highway by paving it with open graded pavement and then failing to appropriately modify its winter maintenance procedures. Lane does not dispute that the State, in affirmatively deciding to pave the highway with open graded pavement, is immune from liability under 12 V.S.A. § 5601(e)(8). Instead, Lane argues that once the State made the decision to pave the road with open graded pavement, its prior winter maintenance procedures should have been modified, and its resulting failure to properly maintain the open graded pavement indirectly, yet affirmatively, created the dangerous condition. We again turn to the *Searles* test and conclude that decisions concerning winter maintenance procedures fall under the discretionary function exception and, like the State's decision to pave the highway with open graded pavement, are immune from liability. Decisions of how to allocate snow plow operators, resources, and equipment, whether for open graded pavement or conventional pavement, are clearly decisions that involve discretion and elements of choice. The Vermont Agency of Transportation (VAOT) must use discretion in deciding how many workers to call in for any given winter storm event, how many trucks to put on the road at any given time, where on the highway to place those vehicles, and how much salt to use. Decisions of how to combat severe winter weather conditions clearly involve the balancing of policy considerations, including safety, economic, social, and environmental factors. See *Amelchenko v. Borough of Freehold*, 201 A.2d 726, 730 (N.J. 1964) ("The decision adopting a procedure regulating when, where and in what order of priority the equipment and personnel are to be used in dealing with [snowstorms] is legislative or governmental in nature. Such decisions cannot be subject to review in tort suits for damages, for this would take the ultimate decision-making authority away from those who are responsible politically for making the decisions."); see also *Hennes v. Patterson*, 443 N.W.2d 198, 204 (Minn. Ct. App. 1989) (the state's decision not to remove a snowbank along a bridge guardrail on the weekend was done pursuant to a policy which balanced a number of factors, including safety and finances, and is therefore the type of decision which is immune from liability under the discretionary function exception).

To survive summary judgment the burden is on Lane to allege facts that would support a finding that the State's decisions of how to combat ice on a highway during a winter storm, open graded pavement or not, are not the kind of decisions grounded in public policy considerations. Again, Lane has failed to do so. Lane relies heavily on the State's winter maintenance logs as proof that the quantity of salt applied to the highway was deficient. The State concedes and Lane himself recognizes that the VAOT employees did not adequately record their de-icing efforts in their maintenance records during this time. In fact, as Lane acknowledges, the majority of the factors and conditions to be recorded on the maintenance logs such as air and pavement temperatures, traffic conditions and snowpack, are absent. From this Lane argues that faulty record keeping demonstrates the State's failure to act with diligence in maintaining safe roads. Failure to record efforts to maintain is not the equivalent of a failure to maintain. To the contrary, the State claimed that its employees worked "around the clock," applying a total of 171 tons of salt (more than double the amount accounted for in the maintenance logs), and that given the dire weather conditions the employees were not able to take the time away from their de-icing duties to maintain the logs. As stated by one employee: "when it is freezing rain, you are more concerned with getting back up there, instead of sitting down, writing stuff." Lane offered no evidence to contest these assertions. The State's decisions to pave the highway with open graded pavement and how to best allocate employees and resources to combat severe winter weather conditions on such pavement are therefore protected by 12 V.S.A. § 5601(e)(8) and (e)(1) respectively.

In the alternative, Lane argues that even assuming the State did not affirmatively create a dangerous condition on the open graded pavement by failing to modify its winter maintenance procedures, it had actual or constructive notice that this section of I-89 had a propensity to ice up and become dangerous in the wintertime and the State thereby breached its duty by failing to modify its maintenance procedures to ensure the roads were in a reasonably safe condition. See *McCormack*, 150 Vt. at 445, 553 A.2d at 568. Lane has failed to come forward with specific facts that would establish that the State had actual or constructive notice that the section of I-89 in question was particularly susceptible to icy conditions. In response to the State's motion for summary judgment, Lane offered affidavits concerning weather reports for the day in question and the geography of the area, as well as affidavits of two lay witnesses who opined that

the section of road in question was susceptible to icing. The opinions of the two lay witnesses do not constitute notice to the State as neither affiant claimed to have shared their concerns with any state agency. In fact, in deposition seven state employees were asked if the relevant section of I-89 North was particularly susceptible to icy conditions and accidents. None of them answered in the affirmative.[3] Lane also offered the affidavit of an accident reconstruction expert wherein the expert opined that the area in question has a higher than normal accident rate. The expert, however, did not address the cause of the accidents or whether they were related to winter weather conditions, nor did he indicate how he arrived at his conclusion. Testimony which presents nothing but conclusions is insufficient to defeat a motion for summary judgment. *Morais v. Yee*, 162 Vt. 366, 371-72, 648 A.2d 405, 409 (1994) (expert opinions that are unsupported by any specific facts, or any indication of how the opinion was formulated, cannot be used to meet the burden of demonstrating a disputed matter of fact).

Finally, there was no evidence that the State had notice of any pre-existing dangerous situation in the area of I-89 where the accident occurred beyond the general situation created on the highway by the storm that day. "If the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment." *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992). Because Lane has failed to show that the State breached its duty to use reasonable diligence to maintain its roads in a reasonably safe condition, the State is entitled to summary judgment as a matter of law.

*Affirmed.*

---

[3] The State employee responses included the following: "Any one of them can go bad, anywhere, any time of day"; "all areas in [my] district command attention in a freezing rain situation"; "[I]t is not any different from one end to another.... When you get freezing rain coming down, it can be slippery anywheres [sic]"; "I cannot pick a certain area of the interstate that would freeze over quicker than another area. And I am basing this on accidents that I have investigated over the years in Middlesex."; "[T]he whole interstate is susceptible to icy and snowy roads. I can't say one particular area is more susceptible than the other."; "It can happen anywhere, all over the interstate, anywhere. It just depends on what the weather does . . . you couldn't possibly predict it."