Johnson v. Vermont Agency of Transportation, No. 1004-03 CnC (Norton, J., Jan. 31, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
Chittenden County, ss.:

BRIDGET M. JOHNSON

v.

VERMONT AGENCY OF TRANSPORTATION

ENTRY

The plaintiff, Bridget M. Johnson, seeks to recover from the Vermont Agency of Transportation for its alleged negligence while performing maintenance on a traffic light. The State files a summary judgment motion, arguing that the maintenance actions fall under the discretionary function exception to the Vermont Tort Claims Act, and therefore, the State has sovereign immunity. The Court agrees and grants the State's motion.

This case stems from a traffic accident at the intersection of U.S. Route 7 and Mountain View Drive in Colchester, Vermont. On the day of the accident, the Transportation Agency was performing routine maintenance on a traffic signal at this intersection. In order to facilitate this maintenance, Russell Velander, a traffic signal technician with the Transportation Agency, changed the traffic signals at this intersection from the standard "stop-and-go" cycle to a flash cycle—yellow flashes for Route 7 and red flashes for Mountain View Drive.

Johnson was driving south on Route 7 in the right-hand lane. When she went

through the flashing yellow light, Marguerite Majarian pulled onto Route 7 from Mountain View and struck the side of Johnson's vehicle, causing injury. Johnson now sues the Transportation Agency, claiming negligence in Velander's decision to perform the maintenance at noon—a period of relatively high traffic—and failure to implement adequate traffic control.

In its summary judgment motion, the State argues that Velander's conduct was consistent with the Transportation Agency's governing regulations. Vermont has adopted the standards in the U.S. Department of Transportation Federal Highway Administration's Manual on Uniform Traffic Control Devices (MUTCD) for the "design, method of installation, placement or repair" of traffic control signals. 23 V.S.A. § 1025. Because the MUTCD regulations grant Velander discretion as to the manner in which he performs maintenance work on traffic signals, the State argues, Velander's conduct falls within the discretionary function exception to the Vermont Tort Claims Act. Therefore, the State has not waived its sovereign immunity under the Act, and this court lacks jurisdiction over Johnson's claim.

Summary judgment is appropriate where there are no genuine issues as to any material fact and any party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Here, the dispositive issue is a jurisdictional question and is one of law only. This issue is whether a state employee's decisions as to the time and manner of traffic signal maintenance falls within the discretionary function exception to the Vermont Tort Claims Act. For the following reasons, the court believes that they do. Therefore, this court lacks jurisdiction over Johnson's claim and summary judgment for the State is appropriate.

The court has no jurisdiction to hear a lawsuit against the State unless the State waives its sovereign immunity. Lane v. State, 174 Vt. 219, 222 (2002). Under the Vermont Tort Claims Act, the State has waived sovereign immunity for negligent and wrongful conduct of State employees who act within the course of their employment. 12 V.S.A. § 5601(a). The Act has an exception, however, for "an act or omission . . . based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused." Id. § 5601(e)(1). "The purpose of this exception is assure that the courts do not invade the province of coordinate branches of government by passing judgment on legislative or administrative policy decisions through tort law."

Sabia v. State, 164 Vt. 293, 307 (1995).

In interpreting this exception, the Vermont Supreme Court has adopted the two-part test in United States v. Gaubert, 499 U.S. 315 (1991). Searles v. Agency of Transp., 171 Vt. 562, 563 (2000) (mem.). Under this test, a court must first determine whether the State employee's act was discretionary in nature, involving "an element of judgment or choice." Lane, 174 Vt. at 223 (internal quotes omitted). If the act was discretionary, then the court must determine whether the judgment is of the kind that the discretionary function exception was designed to shield. In other words, the court must determine if the judgment is "based on considerations of public policy." Id. at 224 (internal quotes omitted).

Where the State has established a governmental policy, as expressed or implied by statute, regulation, or agency guidelines, that allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. at 225. The plaintiff then has the burden to show that the conduct in question is "'not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.'" Searles, 171 Vt. at 563 (quoting Gaubert, 499 U.S. at 324-25).

Here, Velander acted under express regulatory discretion. Section 4D.12 of the MUTCD states that changing a traffic signal from the standard "stop-and-go" mode to flashing mode, as Velander did here, "shall be permitted to be made at any time." Moreover, Part 6 of the MUTCD, which addresses temporary traffic control, is replete with discretionary guidance. Section 6A.01, for example, provides that statutory authority for implementing and enforcing road user regulations, parking controls, speed zoning, and incident management in temporary traffic control situations "shall provide sufficient flexibility in the application of temporary traffic control." In the support for this standard, the MUTCD states

> No one set of temporary traffic control devices can satisfy all conditions for a given project. At the same time, defining details that would be adequate to cover all applications is not practical. . . . The temporary traffic control selected for each situation depends on type of highway, road user conditions, duration of operation, physical constraints, and the nearness of the work space to road users.

Finally, in addressing signal maintenance, § 4D.02 states that the responsible agency should "[p]rovide for alternate operation of the traffic control signal during a period of failure, using flashing mode or manual control, <u>or</u> manual traffic direction by proper authorities as might be required by traffic volumes or congestion." (Emphasis added).

Given these MUTCD provisions, Velander's conduct was discretionary and presumptively policy-related, and Johnson bears the burden of providing facts to show that the conduct was not grounded in the policy of the MUTCD. Johnson argues that the MUTCD's policies are narrowly confined to safety concerns, and Velander's decisions to conduct maintenance work at noon and to control traffic by merely switching the control signal to a flashing mode were not within the MUTCD's policy goals.

Johnson's definition of the underlying policies here is too narrow, however. The Legislature adopted the MUTCD in a broad chapter of the Vermont Statutes Annotated entitled "Operation of Vehicles." This chapter addresses everything from stopping at a railroad crossing, 23 V.S.A. § 1006, to driving under the influence, <u>id</u>. § 1200–1220a, to appropriate rubber tires on trucks, <u>id</u>. § 1302. The obvious thrust of these varied provisions is the promotion of motor vehicle safety, but as in all areas of safety regulation, the statute addresses the balance between safe travel and other concerns, such as efficiency and convenience for motorists. As the Vermont Supreme Court recognized in <u>Lane</u>, for example, the decision of whether to close a highway to protect the public, <u>id</u>. § 1006a(a), is a "'planning-level decision' . . . within the ambit of the discretionary function." <u>Lane</u>, 174 Vt. at 225 (quoting <u>Estate of Arrowwood v. State</u>, 894 P.2d 642, 646 (Ala. 1995)). "'[O]therwise, . . . state officials would be forced to close state highways upon receiving notice of the first accident which resulted from adverse weather and road conditions.'" <u>Id</u>. (quoting <u>Arrowwood</u>, 894 P.2d at 646). Moreover, the Legislature has instructed the Transportation Agency to consider various issues in carrying out its responsibilities. See, e.g., 19 V.S.A. § 10b(b) (stating that agency's transportation projects "shall be designed to provide safe and efficient transportation and to promote economic opportunities for Vermonters and the best use of the state's natural resources"). Thus, the general regulatory scheme is one of balancing safety against other concerns, not mere safety alone.

The MUTCD itself reflects this balance between safety on the one hand and efficient and convenient road travel on the other. See, e.g., MUTCD § 1A.01 ("The

purpose of traffic control devices, as well as principles for their use, is to promote highway safety and efficiency . . . ."); id. § 1A.09 ("The decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgment."); see also Searles, 171 Vt. at 564 (interpreting earlier version of MUTCD as discretionary).

Finally, courts in other jurisdictions have also held that road construction and maintenance regulations which balance safety with other concerns have broad policy implications. See, e.g., Baum v. United States, 986 F.2d 716, 722 (4th Cir. 1993) (holding that guardrail design judgment based on policies of resource allocation, as well as safety); Aguehounde v. District of Columbia, 666 A.2d 443, 448 (D.C. 1995) (holding that decisions regarding duration of traffic signals balances safety against interests of "commerce and convenience").

Velander's decisions with regard to the maintenance operation in this case were within the policies of the general regulatory scheme regarding motor vehicles and within the policies of the MUTCD in particular. Decisions regarding traffic signal maintenance involve numerous policy considerations other than mere safety, including efficient resource allocation in managing roads throughout Vermont and efficiently improving traffic flow. To entertain her suit, the court would be invading the Legislature's policy decisions through tort law—something the discretionary function exception was designed to prevent. Johnson has not met her burden of showing that Velander's decision fell outside of the State's underlying policies for motor vehicles, and thus the court has no jurisdiction to hear her tort claim.

The court also notes that Johnson's arguments regarding Velander's subjective intent, as evidenced in deposition testimony, is irrelevant. Gaubert states that the court's inquiry should focus not on a State decisionmaker's subjective intent, "'but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" Searles, 171 Vt. at 564 (quoting Gaubert, 499 U.S. at 325). Thus, the court looks to Velander's decisions alone and ascertains whether they were reasonably within the policies of the regulatory scheme. For the reasons above, the court believes that they were. There certainly are circumstances where judgment calls fall outside of the policies within a discretionary regulatory scheme and one need not examine subjective intent in order to make this determination. See, e.g., Gaubert, 499 U.S. at 325 n.7 (holding that

hypothetical negligent traffic accident by government employee would not be within policies of employee's discretionary regulations); <u>Gotha v. United States</u>, 115 F.3d 176, 181 (3d Cir. 1997) (holding that failure to maintain path on which plaintiff was injured did not implicate Navy's policies of national security or military training). This case does not present such circumstances.

ORDER

For the foregoing reasons, the Transportation Agency's summary judgment motion is GRANTED.

Dated at Burlington, Vermont, January 31, 2005.

_____/s/_____
Richard W. Norton     Judge