## Paul SEARLES, et al. v. AGENCY OF TRANSPORTATION

[762 A.2d 812]

No. 99-210

August 24, 2000. In this negligence action, plaintiffs appeal the Orleans Superior Court's grant of summary judgment to defendant State of Vermont Agency of Transportation. Plaintiffs claimed the State was under a duty to maintain a sign warning of a nearby roadway intersection, the failure of the State to do so was the proximate cause of the plaintiffs' injuries, and the State was not immune from suit for their negligent inaction. The court held: (1) the State was immune from liability under 12 V.S.A. § 5601(e)(8); (2) the State was immune from liability under 12 V.S.A. § 5601(e)(1); (3) the State had no duty to erect a warning sign; and (4) the failure to erect a warning sign was not a proximate cause of the plaintiffs' injuries. We conclude that the State is immune from liability under 12 V.S.A. § 5601(e)(1), and, therefore, affirm.

On December 27, 1994, appellant Lisa Searles was driving east on Route 105 in Berkshire; Jason Callan was driving in a line of cars behind the Searles. Lisa slowed down, put on her left-hand-turn signal, and began turning left on to Marvin Road, a dirt road. At the same time, Callan pulled left into the westbound lane of Route 105, and began to pass the cars in front of him. Callan's car struck Lisa's car, and Lisa and her daughters, Tanya and Denise, were injured. The Searles family sued the State in negligence, alleging that the State had, and breached, a duty to erect a sign on Route 105, warning drivers of the intersection with Marvin Road, and that the failure to erect a sign was a proximate cause of their damages. More specifically, according to the Searles, there had been a sign on Route 105 east, near the intersection with Marvin Road, warning drivers of a nearby railroad crossing and the road. Some time prior to the accident, both the railroad track and the warning sign were removed. The Searles contended that this sign served a dual purpose, warning drivers of both the railroad and the intersection with Marvin Road, and that the State should have replaced it with a sign warning drivers of the intersection with Marvin Road.

"Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the nonmoving party." *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994). The relevant facts, set forth above, are not in dispute; therefore, the issue is one of law, and our review is nondeferential and plenary. See *N.A.S.*

*Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438-39, 736 A.2d 780, 783 (1999).

Under the common law, lawsuits against the State are barred unless the State waives its sovereign immunity. See *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 484-85, 622 A.2d 495, 497 (1993). Under 12 V.S.A. § 5601(a), the State of Vermont has waived its immunity to lawsuits to the extent a private analog exists. See *Denis Bail Bonds*, 159 Vt. at 485-86, 622 A.2d at 498. There are, however, statutory exceptions to this waiver. See 12 V.S.A. § 5601(e). In *Peters v. State*, 161 Vt. 582, 582, 636 A.2d 340, 340 (1993) (mem.), we held that, under § 5601(a), the State could be sued for negligent placement of warning signs because a private analog existed. We did not, however, address any of the statutory exceptions.

Under 12 V.S.A. § 5601(e)(1), the State's immunity is preserved for

> [a]ny claim based upon an act or omission of an employee of the state exercising due care, in the execution of a statute or ˎregulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused.

The purpose of the second clause of § 5601(e)(1), the discretionary function exception, "is to assure that the courts do not invade the province of coordinate branches of government by passing judgment on legislative or administrative policy decisions through tort law." *Sabia v. State*, 164 Vt. 293, 307, 669 A.2d 1187, 1196-97 (1995).

In *United States v. Gaubert*, 499 U.S. 315 (1991), the United States Supreme Court set forth a two-part test for determining whether a plaintiff's claim is barred by the discretionary function exception.\* Under this test, a court must determine whether the challenged act involves "'an element of judgment or choice,'" or whether a "'statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the court concludes that the act involves judgment or choice, it must then determine "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* at 322-23 (quoting *Berkovitz*, 486 U.S. at 536). Because the purpose of the exception is to prevent judicial second guessing of legislative or administrative policy judgments, "the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537). According to the *Gaubert* Court:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

---

\*The *Gaubert* Court was analyzing the discretionary function exception to the Federal Tort Claims Act, which is nearly identical to that of Vermont's Tort Claims Act. "We therefore look to the case law interpreting the federal provision to guide us" in analyzing § 5601(e). *LaShay v. Department of Social & Rehab. Servs.*, 160 Vt. 60, 67-68, 625 A.2d 224, 229 (1993).

The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Id.* at 324-25.

The Searles argue that state regulations, specifically the Manual on Uniform Traffic Control Devices (MUTCD), mandated placement of a sign on Route 105, warning drivers of the intersection with Marvin Road. We disagree. The Vermont Legislature has provided that MUTCD "shall be the standards for all traffic control signs, signals and markings within the state." 23 V.S.A. § 1025(a). Thus, "[w]hen new traffic control devices are erected or placed or existing traffic control devices are replaced or repaired the equipment, design, method of installation, placement or repair shall conform with such standards." *Id.* According to MUTCD:

> [W]hile this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.

Federal Highway Administration, U.S. Dept. of Trans., Manual on Uniform Traffic Control Devices 1A-4 (1988). Furthermore: "Warning signs are used when it is *deemed necessary* to warn traffic of existing or potentially hazardous conditions on or adjacent to a highway or street." *Id.* at 2C-1 (emphasis added). Given this language, we conclude, as have other courts, that MUTCD "is more of a guidebook for the installation of signs than a 'specific prescription.'" *Cope v. Scott,* 45 F.3d 445,

451 (D.C. Cir. 1995) ("As the manual points out, it is 'not a substitute for engineering judgment,' and warning signs should be posted only 'when it is deemed necessary.'") (quoting MUTCD 1A-4 & 2C-1); see also *Harmann v. Schulke,* 432 N.W.2d 671, 674 (Wis. Ct. App. 1988) (MUTCD "provides in its introduction: 'It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.' The Manual does not mandate the erection of any sign.") (quoting MUTCD 1A-4).

The Searles, however, argue that the State concluded that a warning sign was necessary at the intersection of Route 105 and Marvin Road, and thus, under MUTCD, the State was required to erect the sign. In support of this argument, the Searles cite a March 1994 site review conducted by a technician with the Agency of Transportation's Traffic and Safety Division. According to the technician:

> RR tracks were removed last summer along w/all warning signs . . . . Review indicates 2 or 3 [side-road-ahead signs] should be replaced.

However, as the Searles acknowledge, "[t]he report does not indicate which intersections [the technician] was referring to. . . . The affidavit provided by the technician only states that his 1994 study was *not* referring to the Marvin Road intersection." Thus, there is no evidence to support the Searles' contention that the State deemed a warning sign necessary but failed to erect one. We conclude that the decision whether or not to erect a warning sign involves an element of judgment or choice, and is, therefore, a discretionary act.

Next, the Searles contend that the State's failure to erect a sign on Route 105 was not based on public policy considerations. The Searles have, however,

failed to "present specific facts sufficient to rebut the presumption" that a discretionary decision is based on public policy considerations. *Baldassaro v. United States*, 64 F.3d 206, 212 (5th Cir. 1995) ("the burden is on Baldassaro to allege facts that would support a finding that the challenged action is not the kind of conduct that can be said to be grounded in [public policy considerations]."). See also *ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n*, 36 F.3d 409, 412 (5th Cir. 1994) ("Here, the plaintiffs have alleged nothing that would suggest that the statutory discretion exercised by the banking agencies—whether or not exercised negligently—was not based on considerations of public policy. Accordingly, plaintiffs' averments fail the second part of the *Gaubert* test."); *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993) ("Under . . . *Gaubert*, we will not assume that government agents, in undertaking actions of the type normally thought to involve policy choices, in a particular case acted arbitrarily or on whim, disregarding those essential policy questions."); *Kiehn v. United States*, 984 F.2d 1100, 1108 n.12 (10th Cir. 1993) ("Nothing in the record rebuts the presumption that under circumstances such as this, the government's actions and decisions were grounded in policy."); *Alderman v. United States*, 825 F. Supp. 742, 745 (W.D. Va. 1993) ("Because the posting of signs along the Parkway by the National Park Service is conduct that is discretionary in nature, the defendant is protected from liability under the discretionary function exception of the FTCA, even though no evidence has been presented that the National Park Service deliberated as to whether to post signs warning of pedestrian usage."). We recognize that some states have declined to apply *Gaubert*'s presumption. See, e.g., *Tseu ex rel. Hobbs v. Jeyte*, 962 P.2d 344, 349 (Haw. 1998) ("We believe that the analysis in *Gaubert* does not provide sufficient protection to citizens injured by the actions of government employees."). The facts of the instant case, however, illustrate why *Gaubert*'s presumption makes sense. The intersection at issue is just one of many dirt road intersections in Vermont. To reverse *Gaubert*'s presumption and require the State to produce evidence that it made a conscious decision, based upon policy considerations, not to place a warning sign at every dirt road intersection in Vermont, would be unduly burdensome. The Searles have failed to overcome the presumption that the discretion exercised by the State was based on public policy considerations.

Finally, our analysis in the recent decision, *McMurphy v. State*, 171 Vt. 9, 757 A.2d 1043 (2000), does not apply to the facts of this case. In *McMurphy*, we were construing 12 V.S.A. § 5601(e)(8), which preserves the State's immunity for "[a]ny claim arising from the selection of or purposeful deviation from a particular set of standards for the planning and design of highways." 12 V.S.A. § 5601(e)(8). The issue here, however, is not the *planning and design* of Route 105. As noted, the Searles' negligence claim is predicated upon the State's failure to *replace* a railroad crossing sign with a warning sign. Therefore, § 5601(e)(8) and *McMurphy* do not apply.

*Affirmed.*

Motion for reargument denied September 15, 2000.