

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2000

# Mitchell v. United States

Precedential or Non-Precedential:

Docket 99-3357

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Mitchell v. United States" (2000). *2000 Decisions.* Paper 178.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/178

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 28, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3357

DEBBIE MITCHELL

v.

UNITED STATES OF AMERICA,

      Appellant.

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 96-cv-00897)
District Judge: Honorable A. Richard Caputo

Argued: June 13, 2000

Before: SLOVITER, BARRY and ALDISERT, Circuit Judges.

(Filed: August 28, 2000)

      Mary C. Frye
      United States Attorney
      David M. Barasch
      United States Attorney
      David W. Ogden
      Acting Assistant Attorney General
      Office of United States Attorney
      Federal Building
      228 Walnut Street
      P.O. Box 11754
      Harrisburg, PA 17108

Robert S. Greenspan
United States Department of Justice
Civil Division, Appellate Staff
10th & Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Douglas Hallward-Driemeier (Argued)
United States Department of Justice
Civil Division, Appellate Staff
601 D Street, N.W.
Washington, D.C. 20530

Attorneys for Appellant

J. Craig Currie (Argued)
Currie & Strawley
Two Penn Center
Suite 1032
Philadelphia, PA 19102

Attorney for Appellee

OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal from the district court's judgment in favor of Appellee Debbie Mitchell in her complaint brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. S 1346, requires us to decide whether the National Park Service's choice not to repair or improve a drainage ditch and concrete head-wall located five feet west of a paved roadway came within the discretionary function exception to the Act so as to immunize the Service from Mitchell's suit brought after she collided with a head-wall at the end of a drainage ditch.

Under the Federal Tort Claims Act, the United States waives sovereign immunity for torts involving "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. S 1346(b). The FTCA carves out an exception to governmental liability and provides:

2

> The provisions of this chapter . . . shall not apply to--
>
> (a) Any claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government . . .

28 U.S.C. S 2680.

The United States contends on appeal that the National Park Service's decision not to repair or improve the drainage ditch and head-wall was a legitimate exercise of governmental discretion and thus not actionable under the FTCA. We agree with the government and will reverse.

The district court had federal question jurisdiction under 28 U.S.C. SS 1346(b), 2671. This court has appellate jurisdiction over the final decision of the district court pursuant to 28 U.S.C. S 1291. The United States filed a timely notice of appeal under Rule 4(a), Federal Rules of Appellate Procedure. This court exercises plenary review over the applicability of the discretionary function exception. See United States Fidelity & Guaranty Co. v. United States, 837 F.2d 116, 119 (3d Cir. 1988).

I.

The National Park Service, a bureau within the Department of the Interior, manages the nation's parks and recreational areas, including the Delaware Water Gap National Recreation Area, a unit of the National Park Service. Highway Route 209 runs through the Recreation Area and was designed, built and maintained by the Commonwealth of Pennsylvania. In 1983, the Commonwealth ceded State Route 209 to the United States as part of the Recreation Area.

Since the time the roadway was received from Pennsylvania, the Park Service has adopted a policy aimed at converting it from a commercial through-road to one used in connection with the Recreation Area itself. To this end, Congress enacted legislation closing the road to non-local commercial traffic and provided funding for the construction of a bypass in New Jersey, which was

3

explicitly intended as an alternative to Route 209. In 1996, Congress provided that all commercial traffic not connected with the Recreation Area itself will be barred from Route 209 as of September 30, 2005.

Since 1983 the Park Service has performed necessary maintenance on the road. Because of the condition of the road as received from the Commonwealth, however, the Park Service has not had sufficient appropriations for a complete reconstruction, which has resulted in the Service setting priorities among work items. The Service conducted an engineering study of the roads in the Recreation Area in 1986 that identified numerous bridges that were in need of reconstruction because of structural deficiencies, insufficient width and low load limits, and reported that "most of the paved roads in the Recreation Area are in need of an overlay in a minimum of ten years." App. at 154. The study recognized also that "[c]oncrete posts, telephone poles, culvert head-walls, and trees within the clear zone . . . may constitute a safety hazard." Id. Such encroachments existed "on nearly all road sections in the Park." Id. Because of the massive repairs needed, the Service was forced to determine priorities and repair the most urgent problems first. From 1989 to 1993 no accidents, other than Mitchell's, were attributed to the Eshback area of Route 209, and a 1992 traffic safety report did not cite this stretch of roadway as a high hazard area. See App. at 65.

On July 27, 1993 at approximately 7:30 p.m., Appellee Debbie Mitchell was driving her 1989 GMC pick-up northbound on Route 209 within the Delaware Water Gap National Recreation Area. The road is a two-lane asphalt road which has a posted speed limit of 45 MPH. Attempting to avoid an oncoming vehicle she believed was improperly in her travel lane, she swerved to the right, drove off the road, which had a 4-5 inch drop-off, and entered a grassy area which sloped slightly to the right. The grassy area was approximately 40-50 feet wide and constituted a "clear zone" in which she traveled in excess of 300 feet, at which point she turned to the left to re-enter the road at a speed "no greater than 45 MPH." App. at 22. Mitchell over-corrected, crossed over the northbound travel lane and the

4

southbound lane, drove off the paved roadway, entered a drainage ditch and struck a concrete head-wall of a culvert on the north end of the ditch. The head-wall, culvert and ditch were all approximately five feet from the near edge of paved road. Mitchell was seriously injured.

The district court entered final judgment in Mitchell's favor, holding that the discretionary exception did not apply to the Service's acts and that Mitchell did not negligently operate her automobile. The United States now appeals. We do not meet the question of negligence because we hold that the court erred in not applying the discretionary function exception. Accordingly, we will reverse.

II.

In United States v. Gaubert, 499 U.S. 315, 322-323 (1991), the Court provides a two-part inquiry to guide the application of the discretionary function exception. First, a court must determine whether the act involves an "element of judgment or choice." 499 U.S. at 322. "The requirement of judgment or choice is not satisfied if a `federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . . .' " Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)); see also Cestonaro v. United States, 211 F.3d 748, 753 (3d Cir. 2000).

Second, even if the challenged conduct involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert , 499 U.S. at 322-323 (quoting United States v. Varig Airlines , 467 U.S. 797, 813 (1984)). The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325; see also Cestonaro, 211 F.3d at 753; Sea-Land Serv. Inc. v. United States, 919 F.2d 888, 892 (3d Cir. 1990).

A.

The government refers to the 1984 Park Road Standards as providing guidance to the Park Service. See  App. 67-74; Appellee's App. at 1-5. In particular, the Standards read:

5

> Road safety and efficiency of operation depend on
> adequate levels of cyclic and preventative maintenance
> and repair, which are also essential to protect the
> Service's extensive capital investment in the physical
> facility constituted by park roads, parkways and
> bridges. Consequently, park roads shall be maintained
> to the standards to which they have been constructed
> or reconstructed, and in a condition that promotes
> safety and protects capital investment.

Appellee's App. at 3. The Standards "provideflexibility in
the planning and design processes to allow for
consideration of variations in types and intensities of park
use, for wide differences in terrain and climatic conditions,
and for protection of natural and cultural resources in
National Park System areas." App. at 69. Furthermore,
"[b]ecause of the resources preserved in the Federal land
management areas, and the type of tourist use in such
areas, the roads in certain instances do not have to be
constructed to normal highway standards." App. at 69.

Under these guidelines, the Park Service's decision about
how and when to reconstruct Route 209 would seem to be
a discretionary decision implicating a number of policy
considerations. When the Park Service took over Route 209
from the Commonwealth, there were numerous aspects of
the road's design, condition and safety that called for the
Park Service's attention. The Service was forced to prioritize
among these projects because of its restricted budget and
its limited ability to make repairs.

Because the Park Service legitimately exercised discretion
in determining the priority of road repairs and redesigns,
this court must determine whether its exercise of discretion
was of the type the exception was intended to shield.

B.

In making such decisions, the government must weigh
social, economic and political policy. The Park Service was
required to balance its mission of preserving the parklands
against the severity of design flaws and the different levels
of deterioration of the road as it was received from the
Commonwealth. The Service's choice to focus on a few

6

highly dangerous portions of the road rather than to distribute its finite resources along the whole of Route 209 is a policy choice this court should not second-guess.

The developing jurisprudence setting forth boundaries of the exercise of agency discretion has begun to present certain guidelines. At one extreme, some courts have held that the agency decision went beyond the ambit of appropriate discretion when the agency ignored blatant safety hazards that could have been repaired through routine periodic maintenance mandated by explicit policy. In ARA Leisure Services v. United States, 831 F.2d 193 (9th Cir. 1987), a tour bus went off the road and rolled over a mountain pass in Denali Park, Alaska. Evidence showed that the National Park Service had permitted a road,"which had edges so soft as to be dangerous," to erode from an original width of 28 feet to 14.6 feet at the accident site. 831 F.2d at 195. Citing Aslakson v. United States, 790 F.2d 688, 693 (8th Cir. 1986), the court explained that the discretionary function exception does not apply"[w]here the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations." ARA Leisure Serv., 831 F.2d at 195. Applying the same rationale, we held the Navy did not function within the ambit of statutory agency discretion when it failed to provide a handrail while requiring an employee to negotiate a steep unlighted 20-feet long path where there was evidence that two or three years before the accident the Navy had been asked to install a handrail. Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997). This court reasoned that the Navy was not entitled to the protection of the discretionary function exception because the government failed to articulate a public policy rationale--military, social or economic consideration--that factored into its decision not to rebuild the stairway or install a handrail. See id. at 181-182; see also Cestonaro, 211 F.3d at 757 (holding that because the National Park Service failed to show how providing some lighting, but not more, is grounded in policy objectives it was not protected by the discretionary function exception). We rejected the government's attempt to characterize the decision not to take action as one of national security: "This case is not about a national

7

security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get." Id. at 181.

Similarly, one of our sister circuits reached the conclusion that a failure to repair can fall under the discretionary function exception if it is based on a public policy rationale. The court in Cope v. Scott, 45 F.3d 445 (D.C. Cir. 1995), determined that the Park Service's decision not to repave a particularly slippery stretch of the Rock Creek Parkway was protected. Id. at 451. The court reasoned that "[d]etermining the appropriate course of action would require balancing factors such as Beach Drive's overall purpose, the allocation of funds among significant project demands, the safety of drivers and other park visitors, and the inconvenience of repairs as compared to the risk of safety hazards." Id.; see also Baum v. United States, 986 F.2d 716, 724 (4th Cir. 1993) ("The decision of how and when to replace a major element of a substantial public facility is . . . at bottom a question of how best to allocate resources.").

III.

From case law, it becomes apparent that in applying the teachings of Gaubert, the inquiry becomes fact-specific.

A.

It bears emphasis in this case that the Park Service inherited Route 209 from Pennsylvania in 1983. The record indicates that a study conducted shortly thereafter revealed numerous design and safety issues. A number of bridges were in need of repair or reconstruction due to structural deficiencies, insufficient width and load limitations. One bridge in particular was rapidly deteriorating. In addition, the report found that "on nearly all road sections in the park" there were obstructions within the desirable clear zone, including "[c]oncrete posts, telephone poles, culvert head-walls, and trees," some "within a foot or two of the edge of the pavement." App. at 154. Finally, the study

8

indicated that most of the roads in the park would need to be resurfaced within the next ten years.

In determining whether to commit funds for a complete reconstruction of Route 209, the government had to consider the ultimate purpose of the road, whether it would continue as a major commercial through-road or whether its use would be scaled back to serve principally as a recreational road. The Park Service decided that it was desirable to turn Route 209 into a "scenic parkway[ ] such as Skyline Drive in Shenandoah National Park and Blue Ridge Parkway." App. at 65. Congress closed the road first to some and later to all non-park-related commercial traffic, and it allocated monies toward the construction of a bypass that would serve as an alternative to Route 209. However, Congress did not allocate funds for the complete reconstruction of the road itself.

In light of these larger policy decisions, the Park Service was forced to determine priorities among the desirable improvements to the recently ceded Route 209. Major structural deficiencies, such as the rapidly deteriorating bridge, understandably were "priority 1 work." App. at 154. Among the roadside obstructions that were present all along the park's roads, the Park Service report noted that those within one or two feet of the road were of particular concern.

B.

Unlike the roadway in ARA Leisure Services or the steep hillside lacking a guardrail in Gotha, the complaint here concerns a concrete culvert head-wall that was five feet west of the paved roadway. This embankment would only become dangerous to an operator of a vehicle when two conditions are present: (1) the operator proceeded northbound on a southbound lane, and (2) the operator drove the vehicle five feet off the road in the wrong direction. The Park Service had to balance the costs of the repairs of every culvert head-wall along Route 209, along with the other safety issues identified in the 1986 study, against the low risk of an accident. See App. at 65 (from 1989 to 1993 no accidents, other than Mitchell's, were attributed to the Eshback area of Route 209).

9

Under these circumstances we conclude that the Service's decision to determine its repair and design priorities came within the discretionary function exception to the FTCA. Unlike Gotha, the Park Service has articulated several policy considerations that are implicated in the Park Service's decision not to undertake a reconstruction of all drainage ditches along Route 209. This case, therefore, falls in line with the major policy decisions at stake in Cope and not the "mundane, administrative, garden-variety, housekeeping problem" presented in Gotha, 115 F.3d at 181.

* * * * *

We have considered all other contentions raised by the parties and conclude that no further discussion is necessary. We hold that the discretionary function exception applies to the Park Service's decision not to repair or redesign the concrete culvert head-wall and thus the district court did not have jurisdiction to entertain a suit against the Service. The judgment of the district court will be reversed and the proceedings remanded to the district court with a direction to enter judgment in favor of the government.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit