NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 64

No. 22-AP-079

| | |
|---|---|
| Paul Civetti | Supreme Court |
| | |
| v. | On Appeal from Superior Court, Grand Isle Unit, Civil Division |
| | |
| Selby Turner & Town of Isle La Motte | September Term, 2022 |

David A. Barra, J.

Pietro J. Lynn of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for Plaintiff-Appellant.

Brian P. Monaghan and Zachary J. Chen of Monaghan Safar Ducham PLLC, Burlington, for Defendants-Appellees.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **WAPLES, J.** The primary issue in this appeal is whether the Town of Isle La Motte and its road commissioner, Selby Turner, are entitled to qualified immunity as a defense to plaintiff Paul Civetti's negligence claims. The trial court determined that both the Town and the road commissioner were entitled to qualified immunity and granted their motions for summary judgment after concluding that decisions regarding road alterations were discretionary, "involv[ing] an element of judgment or choice," rather than ministerial, meaning "prescribe[d]." Searles v. Agency of Transp., 171 Vt. 562, 563, 762 A.2d 812, 814 (2000) (mem.) (quotation omitted). We agree with the trial court that deciding whether to widen Main Street was discretionary, thus entitling both the Town and the road commissioner to qualified immunity. We therefore affirm.

¶ 2.     The underlying tort action in this appeal followed an August 2016 motor vehicle accident in the Town of Isle La Motte. Plaintiff was driving a propane truck on Main Street when he lost control of the vehicle causing it to roll over and come to rest on its roof. Plaintiff asserts that defendants were negligent in failing to widen Main Street in accordance with Vermont Town Road and Bridge Standards, causing his accident. The State of Vermont promulgates Town Road and Bridge Standards to serve as guidance for municipalities when they decide to construct or alter a town highway. Plaintiff filed a negligence claim against defendants the Town of Isle La Motte and Selby Turner, in his capacity as road commissioner, seeking damages for plaintiff's injuries. The parties dispute what authority, if any, the Town Selectboard delegated to the road commissioner to construct, lay out, and alter Town roadways.

¶ 3.     Plaintiff's original complaint was dismissed by the trial court based on municipal immunity, culminating in the parties' first appearance before this Court. See Civetti v. Turner, 2020 VT 23, ¶ 1, 212 Vt. 185, 233 A.3d 1056 (Civetti I). In Civetti I, we held that the statutory framework amounts to a waiver of municipal immunity, placing the Town in the shoes of its municipal officers, and entitling it only to the defenses available to those officers. Id. ¶ 15; see also 24 V.S.A. § 901(a) (governing actions by or against municipal officers and employees). We did not foreclose a qualified-immunity defense, however, and remanded the case to the trial court to consider "a host of factors not evident from the bare pleadings" in deciding whether such a defense was available to defendants. Civetti I, 2020 VT 23, ¶¶ 32, 37.

¶ 4.     After further development of the record, the Town moved for summary judgment on several bases, including qualified immunity, and the trial court granted the motion. The trial court applied the two-part test established by the United States Supreme Court in U.S. v. Gaubert, 499 U.S. 315, 322 (1991), and adopted by this Court in Searles, 171 Vt. at 563-64, 762 A.2d at 813-14, to determine whether the omission at issue was discretionary or ministerial in nature. The first part of the test asks whether the act or omission employed an element of judgment or choice

2

and, if the act contained such an element, the second part asks whether that act was of the type that the discretionary-function exception was designed to shield from liability. Id., 171 Vt. at 563, 762 A.2d at 814. This exception is designed to protect public officers from suffering legal consequences for making the kind of difficult decisions that officials are often required to make. See Gaubert, 499 U.S. at 323 ("[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . ." (quotation omitted)).

¶ 5. In analyzing the first prong, the trial court determined that deciding whether to alter town roads was discretionary in nature because there was no explicit policy mandating such action. It noted that the Town had not adopted any policy that would require the widening of Main Street, and further, the Town Road and Bridge Standards did not require municipalities to alter their existing infrastructure. Turning to the second prong, the trial court determined that deciding whether to widen Main Street was necessarily grounded in the kinds of public-policy considerations that the qualified-immunity doctrine was designed to protect. It noted that the road commissioner must weigh factors such as safety and cost in making decisions about highway projects, considerations often steeped in public policy.

¶ 6. Plaintiff appeals, arguing that the road commissioner's duty to maintain Main Street in compliance with the Town's adopted road standards was ministerial in nature and thus defendants are not entitled to qualified immunity. Plaintiff further argues that the road commissioner had a ministerial duty to widen Main Street that flowed from his duty to maintain the town roads, a duty delegated to him by the Selectboard. Plaintiff also asserts that disputed material facts remain regarding the Town's duty to maintain Main Street, namely whether widening Main Street was an "alteration" or routine "maintenance."

¶ 7. "We review a grant of summary judgment de novo, using the same standard as the superior court." Tillson v. Lane, 2015 VT 121, ¶ 7, 200 Vt. 534, 133 A.3d 832. "Summary

3

judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " Alpine Haven Prop. Owners' Ass'n, Inc. v. Deptula, 2020 VT 88, ¶ 22, 213 Vt. 507, 245 A.3d 1245 (quoting V.R.C.P. 56(a)). On the one hand, "we accept as true allegations made in opposition to the motion for summary judgment," and on the other, "[t]he party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. (quotation omitted).

¶ 8.    "Under the doctrine of sovereign immunity, claims against the State are barred unless immunity is expressly waived by statute." Kane v. Lamothe, 2007 VT 91, ¶ 6, 182 Vt. 241, 936 A.2d 1303 (quotation omitted).  The Vermont Tort Claims Act waives the State's sovereign immunity in certain circumstances, including for the acts of state or municipal employees and officials meeting certain elements.  See 12 V.S.A. § 5601 et seq.; see also Civetti I, 2020 VT 23, ¶ 33 (holding that municipal "officials" and "employees" are both protected for purposes of statutory-immunity scheme).  "Absolute immunity is generally afforded to judges . . . legislators, and the highest executive officers," while "[o]nly qualified immunity is extended to lower-level officers, employees, and agents." O'Connor v. Donovan, 2012 VT 27, ¶ 6, 191 Vt. 412, 48 A.3d 584 (quotation omitted).  The second form of immunity is qualified in the sense that an official must show they were: "(1) acting during the course of their employment and . . . within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial acts." Id. (quotation omitted).

¶ 9.    "To be within the scope of employment, conduct must be of the same general nature as, or incidental to, the authorized conduct." Brueckner v. Norwich Univ., 169 Vt. 118, 123, 730 A.2d 1086, 1091 (1999).  Conduct falls outside the scope of employment if it is different in kind from that which is approved by the principal, far outside of the authorized time and space, or too attenuated from achieving the principal's purposes. Id.  "This Court has adopted the federal

4

standard for good faith," which hinges "upon the objective reasonableness of the official's conduct." Amy's Enters. v. Sorrell, 174 Vt. 623, 624-25, 817 A.2d 612, 617 (2002) (mem.). "Such acts are objectively reasonable if an officer of reasonable competence could have made the same choice in similar circumstances." Id. at 625, 817 A.2d at 617. As noted above, courts consider whether an act is discretionary or ministerial by asking: (1) "whether the challenged act involves an element of judgment or choice, or whether a statute, regulation, or policy specifically prescribes a course of action for an employee to follow"; and, if the court determines that the challenged act involves judgment or choice, (2) "whether that judgment is of the kind that the discretionary function exception was designed to shield." Searles, 171 Vt. at 563, 762 A.2d at 813-14 (quotation omitted). "[T]he [discretionary-function] exception 'protects only governmental actions and decisions based on considerations of public policy.' " Id. (quoting Gaubert, 499 U.S. at 323). "[T]o survive a motion for summary judgment, a plaintiff must allege facts sufficient to overcome the presumption that the discretion involved policy considerations." Est. of Gage v. State, 2005 VT 78, ¶ 5, 178 Vt. 212, 882 A.2d 1157.

¶ 10. On appeal, plaintiff argues that defendants are not entitled to qualified immunity because deciding whether to widen Main Street was ministerial as opposed to discretionary. First, plaintiff argues that the decisions at issue here did not involve public-policy considerations because they did not require the road commissioner to balance potential benefits with risks to the public. In support of this assertion, plaintiff alleges that the road commissioner failed to attend mandatory trainings as well as familiarize himself with and adhere to the Town Road and Bridge Standards, describing these omissions as "ministerial." But while these omissions may potentially be considered ministerial, they have no bearing on the nature of the decision at the center of this appeal: whether to widen the road surface of Main Street.

¶ 11. In applying the discretionary-function exception, it is not the character of the office or employment that must be evaluated, but the character of the action or omission. See Searles,

5

171 Vt. at 563, 762 A.2d at 814 (noting that "a court must determine whether the challenged act involves [policy considerations]" (emphasis added)); Libercent v. Aldrich, 149 Vt. 76, 81, 539 A.2d 981, 984 (1987) ("Whether qualified official immunity exists in a particular situation depends upon the nature of the specific acts and omissions complained of, and not upon the nature of the office held or the general nature of the activity involved."). Here, it is plain that the decision of whether to widen the road surface of Main Street necessarily involves "an element of judgment or choice," rather than a statutory mandate or employee policy. Searles, 171 Vt. at 563, 762 A.2d at 814. The undisputed facts establish that the road commissioner was required to exercise considerable discretion, weighing considerations of cost, safety, environmental, and aesthetic factors in carrying out his office. These same factors are central to determining whether to alter a town highway by increasing its width, rendering such a decision discretionary in nature. See Est.of Gage, 2005 VT 78, ¶ 7 (compiling cases exhibiting discretionary decision-making).

¶ 12. The Court's analysis in Gage, is instructive. There, the plaintiff asserted that infrastructure guidelines mandated that guardrails be installed in certain circumstances, rendering an official's decision to omit installing a guardrail ministerial. We concluded that because the guide's criteria were suggested, judgment was necessarily required to determine whether the suggested standards should be adopted. Id. ¶ 10. We therefore rejected the plaintiff's argument, holding that "the [g]uide does not purport to impose a mandatory calculus, but merely suggested criteria." Id. ¶ 9 (quotation marks omitted).

¶ 13. The circumstances are similar here. Although the guide mandates construction standards, the adopted roadway regulations apply only to "new or substantially reconstructed roadways." Main Street is not a new or substantially reconstructed roadway and so the Town Road and Bridge Standards are inapplicable. The record contains no evidence tending to show that the Town, through either its Selectboard or road commissioner, chose to newly build Main Street or to substantially reconstruct the same. Thus, like the criteria in Gage, the Town Road and Bridge

6

Standards become binding only after the initial choice of whether to reconstruct the road is made based on policy considerations. See id., ¶ 10. This is the critical distinction here. Because preexisting infrastructure need not comply with the Town Road and Bridge Standards, these standards were inapplicable to Main Street. Thus, the decision at issue here—not to widen the road—was based on policy considerations and was not the type of ministerial act commanded by the Town Road and Bridge Standards.

¶ 14. Because we conclude that the omissions here involved judgment, we must apply the second prong of the Gaubert analysis, asking whether this is the kind of decision that the discretionary-function exception was designed to shield. See Searles, 171 Vt. at 563, 762 A.2d at 814. Plaintiff cites various authorities, including case law, treatises, and Restatements, in support of his contention that the road commissioner's omission does not deserve protection under the discretionary-function exception. First, plaintiff points to several cases in which maintenance and repair are characterized as ministerial acts. Second, plaintiff quotes our decision in Hudson v. Town of East Montpelier, 161 Vt. 168, 638 A.2d 561 (1993), in which we quote a treatise for the propositions that "[o]ne who repairs the street can do a good job without provoking a citizen suit" and "good operation of the street repair department does not harm people, but on the contrary makes their travel safer." Hudson, 161 Vt. at 172-73, 638 A.2d at 564-65 (quoting W. Keeton, Prosser & Keeton on the Law of Torts § 132, at 1065 (5th ed. 1984)). Finally, plaintiff quotes the Restatement (Second) of Torts, which provides "the repair of highways" as an example of a ministerial act. Restatement (Second) of Torts § 895D, cmt. h (1979).

¶ 15. Plaintiff's argument rests on the assumption that widening Main Street is an exercise in maintenance. But plaintiff's voluminous citations miss the point—this is not an instance of highway repair or maintenance but one of alteration and reconstruction. Thus, the majority of cases plaintiff cites are distinguishable. For instance, in our decision in Sagar v. Warren Selectboard, 170 Vt. 167, 744 A.2d 422 (1999), the omission at issue, which this Court

7

held to be ministerial, was failing to plow a Class 3 road so that the plaintiff could access his property. Id. at 168, 744 A.2d at 424. This can be differentiated from the instant case because the plaintiff in that case relied on a statute requiring Class 3 roads to be "negotiable under normal conditions all seasons of the year by a standard manufactured pleasure car." 19 V.S.A. § 302(a)(3)(B). Thus, the act or omission in Sagar was required by a statute that "specifically prescribe[d] a course of action for an employee to follow," meaning that it was not the kind of act that involve[d] an element of judgment or choice." Searles, 171 Vt. at 563, 762 A.2d at 814 (quotation omitted).

¶ 16. Similarly, in Libercent, relied on by plaintiff, this Court held that maintaining and repairing a state vehicle was a ministerial act "on the facts stated [t]here." 149 Vt. at 81, 539 A.2d at 984. But Libercent is also distinguishable from the present case because motor vehicles are required by statute to be "in good mechanical condition" and to pass an annual inspection, standards for which are established by statutes and regulations. See 23 V.S.A. §§ 1221, 1222; see also Code of Vt. Rules 14 050 022, http://www.lexisnexis.com/hottopics/codeofvtrules (detailing procedures and requirements where state employee inspects state-owned vehicle). Additionally, it was undisputed that the acts at issue in Sagar and Libercent were "maintenance," which makes those cases incompatible with our analysis here. Sagar, 170 Vt. at 175, 744 A.2d at 428; Libercent, 149 Vt. at 82, 539 A.2d at 984.

¶ 17. Deciding whether to alter Main Street to increase its width is exactly the kind of town planning decision contemplated by the discretionary-function exception because it necessarily implicates policy questions. The examples provided by plaintiff, by contrast, are instances of "the mere implementation of a previous policy decision." Gage, 2005 VT 78, ¶ 12 (quotation omitted). "[I]t is presumed that when a government agent is authorized to exercise discretion the agent's acts are grounded in policy when exercising that discretion." Id. ¶ 5. Here, plaintiff has not provided any evidence to rebut this presumption beyond insisting that the act or

8

omission at issue was "maintenance," and therefore ministerial in nature. We therefore hold that the omission at issue here—refraining from widening Main Street—was discretionary in nature, and, for this reason, the Town and the road commissioner are qualifiedly immune from lawsuits such as the one brought by plaintiff here.

¶ 18. Finally, plaintiff asserts that material facts remain disputed, precluding summary judgment. Such facts, he argues, include whether widening Main Street should be considered "maintenance" or "alteration," and how much authority the Selectboard delegated to the road commissioner. Plaintiff further asserts that the road commissioner was aware of various single-vehicle accidents occurring on Main Street, but the only support plaintiff provides for this contention is the testimony of a town resident who, without much detail, describes accidents he has witnessed on Main Street. Plaintiff provides no additional evidence regarding these accidents. A vague account of past accidents, without more, cannot sustain plaintiff's claims.

¶ 19. The extent of the authority delegated to the road commissioner by the Town Selectboard is immaterial. "An issue of fact is material only if it could affect the outcome of the case." Gates v. Mack Molding Co., 2022 VT 24, ¶ 14, __, Vt. __, 279 A.3d 656. The availability of the qualified-immunity defense is independent of the question of how much authority the Town Selectboard delegated to the road commissioner. Such a delegation would not obviate the need to exercise judgment in deciding whether to widen Main Street; it would only shift the judgment from the Selectboard to the road commissioner. Because the qualified-immunity defense is available to the Town and its road commissioner, the extent of the delegation of authority is not a material fact.

¶ 20. Plaintiff also contends that our decision in Hamilton v. Town of Holland, 2007 VT 133, 183 Vt. 247, 950 A.2d 1183, supports his argument because it holds that widening a road without adding lanes might qualify as maintenance rather than an alteration. However, that case too can be distinguished because the issue there was the defendant town's decision to scale back the initial plans for a dirt-road-improvement project to include only regrading and adding gravel

9

as opposed to heavy earthmoving and blasting. It was the scaled-back nature of the project, resulting in only a portion of the road being widened, that prompted this Court to classify it as "maintenance" as opposed to "alteration." Id. ¶ 15.

¶ 21. In contrast, the instant case presents additional considerations not present in Hamilton. For one, all the work performed in Hamilton occurred within the existing right-of-way while here, widening Main Street would likely intrude on the surrounding wetlands, requiring compliance with environmental regulations. Id. ¶ 13. Moreover, the road at issue here is paved as opposed to gravel, requiring differing methods of alteration and repair. Because the discretionary-function exception "depends upon the nature of the specific acts and omissions complained of, and not upon . . . [the] general nature of the activity involved," courts may classify some instances of widening a roadway as "maintenance" and others as "alterations." Libercent, 149 Vt. at 81, 539 A.2d at 984.

¶ 22. Plaintiff relies on Hamilton in arguing that the difference between alteration and maintenance is a question of fact. However, the Court in Hamilton interpreted the meaning of the word "maintenance" and applied that meaning as a matter of law. Id. ¶ 15. Plaintiff seeks to use this Court's statutory interpretation of what constitutes "maintenance," while denying that such a pronouncement is a legal conclusion. However, "[s]tatutory interpretation is a question of law that we review de novo." State v. A.P., 2021 VT 90, ¶ 12, __ Vt. __, 268 A.3d 58. Plaintiff cannot repackage a legal question as a factual one in hopes of staving off summary judgment. Plaintiff's alteration/maintenance dichotomy is, therefore, really a corollary for the discretionary/ministerial dichotomy used to evaluate the discretionary-function exception. Plaintiff's argument implies that where an act or omission is determined to be "maintenance," it will always be ministerial, and where it has found to be "alteration," it will always be discretionary. This is not the case.

¶ 23. Regardless of the terms used to describe discretionary and ministerial acts or omissions, when we define such acts or omissions, as we do here, we provide legal answers to

legal questions. See <u>Kennery v. State</u>, 2011 VT 121, ¶ 30, 191 Vt. 44, 38 A.3d 35 ("Because [the discretionary-function exception] is a question of law which we address de novo, we address it here."). While it may be true, as plaintiff asserts, that "mandatory maintenance duties" are typically ministerial tasks, plaintiff has not shown that either the Town or the road commissioner was commanded to widen Main Street, or that deciding whether to widen Main Street would not require the kind of judgment that the discretionary-function exception seeks to protect. Therefore, because the terms "alteration" and "maintenance" are just substitutions for "discretionary" and "ministerial," having essentially the same meaning in plaintiff's argument, we reject plaintiff's assertion that there remain disputed material facts.

¶ 24. Because the undisputed material facts show that refraining from widening Main Street was a discretionary act, defendants are entitled to summary judgment. See V.R.C.P. 56(a). Whether the Town or the road commissioner decided to refrain from widening Main Street, such a decision hinges on considerations of cost, necessity, traffic conditions, safety, aesthetics, and environmental impact, which are public-policy considerations. This is exactly the type of decision the discretionary-function exception protects. Public-policy considerations necessarily permeate determinations about which roads to alter or reconstruct, inevitably pleasing some interested parties and displeasing others. The discretionary-function exception serves to ensure that public figures like the road commissioner do not suffer legal ramifications for making the types of difficult decisions that policymakers are often required to make. Determining whether to use the Town's limited resources to alter its roadways goes to the heart of this doctrine.

Affirmed.

FOR THE COURT:

_____

Associate Justice

11